Cary S. Kletter
KLETTER & PERETZ
22 Battery Street, Suite 202
San Francisco, California 94111
Telephone: 415.732.3777
Facsimile: 415.732.3791

Attorney for Plaintiff,
REBECCA WALDER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA WALDER,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, and DOES 1 through 10.<br><br>Defendants. | Case No. 08-3462 BZ<br><br>**FIRST AMENDED COMPLAINT OF REBECCA WALDER**<br><br>1. Denial of ERISA Benefits;<br>2. Breach of Fiduciary Duty under ERISA;<br>3. Violation of ERISA section 502(a)(3); and<br>4. Declaratory Relief. |

## INTRODUCTION

This is an action brought by Plaintiff REBECCA WALDER ("WALDER") against Defendant NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, ("NORTHWESTERN") and DOES 1-10 (collectively "DEFENDANTS") in connection with claims arising from DEFENDANTS' denial of WALDER's Long Term Disability ("LTD") benefits claim.

## JURISDICTION

This action is for equitable relief and for benefits under an employee benefit plan and is brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sections 1001 et seq. (hereinafter "ERISA"). This Court has subject matter jurisdiction pursuant to 29 U.S.C. Section 1132 and 28 U.S.C. Section 1331.

## PARTIES

1. WALDER was a resident of the City of San Francisco, County of San Francisco, State of California.

2. WALDER was an employee of the PlumpJack Management Services Group ("PlumpJack"), and was covered as a beneficiary under its Long Term Disability Group Policy issued by NORTHWESTERN, specifically policy number L660723 commencing March 15, 2006 (the "POLICY").

3. NORTHWESTERN is, and at all times herein was, insurance company authorized under the laws of the California to do business as an insurer.

## FACTUAL ALLEGATIONS

4. WALDER worked for PlumpJack for approximately 2 1/2 years during the 2004 to 2007 period, as Director of Marketing.

5. WALDER's position required extensive analytical and problem-solving capabilities, devising branding and marketing strategies, traveling to Tahoe, Napa and San Francisco, working ten hour days and some weekends, sitting in chair at a desk in an office environment, looking at a computer screen, completing paperwork, and working as part of a marketing team, among other responsibilities.

6. In June 2007, at the age of 36, WALDER became disabled with fibromyalgia and myofacial pain. WALDER had never been diagnosed with those conditions prior to June 2007. WALDER could not concentrate on her work because of her pain from fibromyalgia and myofacial pain, and she could not sit at her desk for extended lengths of time.

7. WALDER is indisputably and clearly disabled. She suffers from fibromyalgia, myofacial pain syndrome, temporomandibular joint disorder (TMJ) and other disabilities (including scoliosis). Prior to June 2007, although she had some physical limitations, WALDER was able to perform her work duties. In June 2007, WALDER became disabled with fibromyalgia and myofacial pain for the first time and as a result she is unable to perform the duties of her former position

8. On or about August 23, 2007, when it was clear that as a result of her fybromyalgia and myofacial pain WALDER could no longer work, she applied for LTD benefits from NORTHWESTERN.

9. DEFENDANTS did not thoroughly investigate WALDER's claim, and attempted to shift the burden of investigating the claim onto WALDER.

10. WALDER then received a denial of her long term disability benefits in a letter dated November 21, 2007 (the "Denial Letter"). This decision was an adverse benefits decision within the meaning of Department of Labor regulations under ERISA § 503, 29 U.S.C. § 113. [See 29 C.F.R. §2560.503-1(m)(4)].

11. In the Denial Letter, NORTHWESTERN informed WALDER that her LTD benefits claim was denied because NORTHWESTERN concluded that WALDER was "treated and prescribed medication for [her] neck pain, shoulder pain, arm pain, and back pain, as well as headaches on multiple occasions during the pre-existing period" (Denial Letter, Page 3).

12. NORTHWESTERN **did not** cite any medical records indicating that WALDER was diagnosed, or suffered from, fibromyalgia or myofacial pain during the pre-existing period or at any time prior to June 26, 2007, the date WALDER became disabled. Thus, NORTHWESTERN's denial of WALDER's claim was improper and a violation of their obligations under the POLICY.

13. NORTHWESTERN has never provided any evidence that contradicts WALDER's evidence that she was first diagnosed with fibromyalgia and myofacial pain in June 2007, while her LTD policy was in force. Several medical professionals who have examined and treated WALDER, and even NORTHWESTERN's own records review doctor (Dr. Joseph Mandiberg) substantiate that Ms. Walder is clearly disabled and has restrictions and limitations preventing her from performing her work related duties.

14. Since NORTHWESTERN improperly denied WALDER's claim, WALDER complied with the POLICY's requirement that she appeal for a review of her claim to NORTHWESTERN. By letter dated June 6, 2008, WALDER timely appealed for a review of NORTHWESTERN's erroneous denial of her LTD claim.

15. WALDER's June 6, 2008 appeal review request clearly states that "This letter, along with the entire contents of Ms. Walder's claim handling file, all of Ms. Walder's and our correspondence with Northwestern, documents Northwestern has obtained on its own (such as

the records of SSA and medical records), and the attached documents **constitute her appeal of the denial of her long-term disability benefits and request for review pursuant to §503 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1113, and the Department of Labor regulations issued thereunder."**

16. The Denial Letter plainly states that "If you request a review, it will be conducted by an individual who was not involved in the original decision." (Denial Letter, page 4).

17. By letter dated July 9, 2008, NORTHWESTERN denied WALDER's appeal review request and this lawsuit ensued.

18. Significantly, NORTHWESTERN had the same individual who denied WALDER's initial claim review, and deny again, her appeal review request: specifically Sheila Nolan, a Senior Disability Benefits Analyst employed in the Group Benefits Department of NORTHWESTERN. As the person who reviewed the file, conducted the investigation and wrote the Denial Letter, Ms. Nolan was "involved in the original decision" and as such should not have been involved in the appeal review, as promised in the Denial Letter.

19. An inherent conflict of interest situation exists because NORTHWESTERN has a fiduciary duty to WALDER as the entity which must decide if she is entitled to benefits, and NORTHWESTERN has a financial incentive to deny the claim because as the insurer it must pay for the benefits if they are awarded.

20. The conflict of interest situation was exacerbated because no third party administrator was used, and NORTHWESTERN had the same employee who made the initial benefits denial decision (Sheila Nolan) also make the appeal denial decision.

21. In the July 9, 2008 letter, NORTHWESTERN also sought to include documentation and information that was not previously provided to WALDER, was not in the claims handling file previously provided to WALDER and hence was not part of the "administrative record". Thus, NORTHWESTERN improperly attempted to shoehorn additional documentation and information into the record before this Court, including a report by a vocational expert, which should not considered part of the "administrative record" by this Court.

22. As a result of the actions of DEFENDANTS, WALDER has been improperly denied the benefits described in the POLICY. WALDER suffered financial loss as a result of the improper denial of her LTD benefits.

1st AMENDED COMPLAINT OF REBECCA WALDER

- 4 -

## FIRST CAUSE OF ACTION
### Denial of ERISA Benefits

23. WALDER incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

24. WALDER was a beneficiary under PlumpJack's Group LTD insurance policy.

25. At all material times herein, WALDER complied with all of the material provisions pertaining to the POLICY and/ or compliance has been waived, and/or DEFENDANTS are estopped to argue any failure to comply.

26. Under the POLICY, DEFENDANTS were obligated to pay LTD benefits to WALDER if she became disabled while the POLICY was in force.

27. While the POLICY was in force, on or about June 26, 2007, WALDER became disabled with fibromyalgia and myofacial pain.

28. Despite WALDER's demand that DEFENDANTS provide her with the LTD benefits to which she is entitled, DEFENDANTS have refused to do so.

29. DEFENDANTS' refusal to pay the LTD benefit due to WALDER under the POLICY violates the terms of the POLICY and ERISA.

30. WALDER's claim is brought under Section 502(a)(1)(B) of ERISA which allows a beneficiary to recover benefits due to her and to enforce her rights under an employee benefit plan. 29 U.S.C. §1132(a)(1)(B). Furthermore, the Court has authority to award WALDER her attorney's fees, pre-judgment interest, and costs. 29 U.S.C. §1132(g)(1).

31. As a proximate result of DEFENDANTS' denial of ERISA benefits, WALDER has suffered economic damages including insurance benefits and attorneys' fees, to be shown according to proof.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty under ERISA

32. WALDER incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

33. At all times, DEFENDANTS administered the POLICY with respect to claims and payment of LTD benefits under the Policy. Accordingly, DEFENDANTS are fiduciaries of an employee benefit plan under ERISA.

34. 29 U.S.C. §1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

35. The fiduciary duties under ERISA in part are that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and...
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

36. DEFENDANTS breached their fiduciary duty by acting counter to the interests of a beneficiary, WALDER in the following respects:

 (a) Engaging in a course of conduct to diminish valid claims in an attempt to avoid proper reimbursement to WALDER;

 (b) Unjustly and wrongfully refusing to pay WALDER the LTD benefits due under the Policy;

 (c) Failing to reasonably and adequately investigate WALDER's claims;

 (d) Consciously and unreasonably refusing to make payment to WALDER, with the intent of enriching NORTHWESTERN at WALDER's expense;

 (e) Delaying payment of the claim;

 (f) Unreasonably relying on the opinion of a biased medical professional as grounds for depriving WALDER of the LTD benefit that she is entitled to;

 (g) Unreasonably relying on the opinion of a medical professional who did not examine WALDER as grounds for depriving WALDER of the LTD benefit that she is entitled to;

(h) Failing to give appropriate deference to WALDER's treating medical professionals and doctors;

(i) Adopting unreasonable and self-serving interpretations of the POLICY language as a basis for denial of WALDER's claim; and

(j) Acting in its own self-interest and contrary to the interests of WALDER.

37. By performing the acts set forth above, DEFENDANTS did not carry out its duties with respect to the POLICY solely in the interest of WALDER. Further, DEFENDANTS did not investigate WALDER's claim with the skill, prudence, and diligence that a prudent person would have exercised in a like circumstance.

38. As a proximate cause of the aforementioned conduct by DEFENDANTS, WALDER has suffered economic damages including LTD benefits and attorneys' fees, to be shown according to proof.

### THIRD CAUSE OF ACTION
### Violation of ERISA section 502(a)(3)

39. WALDER incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

40. ERISA section 502(a)(3) grants WALDER the right to bring an action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief." 29 U.S.C. §1131(a)(3).

41. DEFENDANTS' conduct has deprived WALDER of LTD benefits and absent assistance from the Court, DEFENDANTS will continue to deny her the benefit due under the POLICY.

42. Unless DEFENDANTS are restrained from continuing their inappropriate and unjust conduct, they will continue to violate the terms of the POLICY and their fiduciary duties. The denial of the LTD benefits due to WALDER will cause her irreparable harm and it would be difficult or impossible to ascertain the amount of compensation which would afford WALDER adequate relief unless this Court grants injunctive relief.

//

## FOURTH CAUSE OF ACTION
### Declaratory Relief

43. WALDER incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

44. Under the POLICY, DEFENDANTS undertook to insure and did insure WALDER for LTD benefits.

45. At all times herein mentioned, the POLICY was, and is, in full force and effect.

46. An actual controversy has arisen between the beneficiary, WALDER, and DEFENDANTS as to whether a pre-existing condition exclusion in the POLICY applies, as defined in the POLICY.

47. WALDER seeks a declaration by this Court that the pre-existing condition exclusion in the POLICY does not apply, and that WALDER's LTD benefits should have been provided to her when she initially applied.

## PRAYER FOR RELIEF

Wherefore, WALDER prays for this Court to grant the following relief:

1. For all benefits due under the POLICY, together with interest thereon at the legal rate;
2. For attorneys' fees and other expenses incurred to obtain the benefits due under the Policy;
3. For costs of suit incurred herein;
4. That DEFENDANTS be enjoined as described above
5. That declaratory relief by granted as described above; and
6. All other further relief as this Court deems just and proper.

Dated: August 6, 2008                    KLETTER & PERETZ

By: _____
Cary S. Kletter
Attorney for Plaintiff,
REBECCA WALDER

1st AMENDED COMPLAINT OF REBECCA WALDER

- 8 -